**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

BROADCOM CORPORATION and ATHEROS COMMUNICATIONS, INC.,

Plaintiffs,

v.

COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,

Defendant.

Case No. 6:09-cv-513

**COMPLAINT FOR DECLARATORY JUDGMENT**

**DEMAND FOR JURY TRIAL**

**COMPLAINT FOR DECLARATORY JUDGMENT**

Pursuant to 28 U.S.C. §§ 2201 and 2202, FED. R. CIV. P. 57 and the Patent Act, 35 U.S.C. §§ 1 *et seq*., Plaintiffs Broadcom Corporation ("Broadcom") and Atheros Communications, Inc. ("Atheros") bring this action against Defendant Commonwealth Scientific and Industrial Research Organisation ("CSIRO") for a declaration that United States Patent No. 5,487,069 ("the '069 patent") is invalid and not infringed by either Broadcom or Atheros. For their Complaint against Defendant CSIRO, Plaintiffs Broadcom and Atheros allege as follows:

**THE PARTIES**

1. Plaintiff Broadcom is a California corporation having its principal place of business at 5300 California Avenue, Irvine, California 92617. Broadcom designs and sells a broad range of products, including semiconductor chips and software solutions for use in personal computing, network computing, digital entertainment, broadband access products, wireless communications, and mobile devices. Broadcom's products are sold worldwide and in this judicial district.

2. Plaintiff Atheros is a Delaware corporation having its principal place of business at 5480 Great America Parkway, Santa Clara, CA 95054. Atheros is a developer of semiconductor system solutions for wireless and other network communications products, including personal computers, networking equipment and consumer devices. Atheros' products are sold worldwide and in this judicial district.

3. On information and belief, Defendant CSIRO has its principal place of business at Limestone Avenue, Campbell ACT 2612, Australia.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*., and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. CSIRO is not immune from the jurisdiction of the federal or state courts of the United States under the Foreign Sovereign Immunity Act, 28 U.S.C. § 1605(a). In particular, this Court has jurisdiction over CSIRO as it has engaged and is engaging in commercial activities in the United States within the meaning of 28 U.S.C. § 1605(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant CSIRO has conducted and continues to conduct substantial business within this District, is subject to personal jurisdiction within this District, and a substantial part of the events giving rise to this action occurred within this District.

## FACTUAL BACKGROUND

7. The '069 patent is entitled "Wireless LAN" and was issued by the United States Patent and Trademark Office on January 23, 1996. A true and correct copy of the '069 patent is attached as Exhibit 1.

8. CSIRO asserts that it owns and holds all right, title and interest in the ‘069 patent, that the ‘069 patent covers amendments a, g, and draft n of the IEEE 802.11 (hereafter “802.11 a/g/n”) standard for wireless local area networks, and that Broadcom and Atheros customers manufacture, use or sell products that infringe the ‘069 patent by practicing the standard.

9. CSIRO has filed multiple lawsuits in the United States District Court for the Eastern District of Texas against sellers of products offering IEEE 802.11a/g/n wireless functionality, alleging that these sellers infringe the ‘069 patent. CSIRO has also alleged that products which practice the IEEE 802.11a/g/n standard must infringe the ‘069 patent.

10. On September 9, 2009, CSIRO filed an Original Complaint for Patent Infringement in the United States District Court for the Eastern District of Texas, naming Acer, Inc., Acer America Corporation, Acer America Holding Company, Boardwalk Capital Holdings, Ltd., and Gateway, Inc as defendants. In this lawsuit, CSIRO alleges that the defendants each infringe the ‘069 patent.

11. On September 9, 2009, CSIRO filed an Original Complaint for Patent Infringement in the United States District Court for the Eastern District of Texas, naming Sony Corporation, Sony Corporation of America, Sony Computer Entertainment, Inc., Sony Computer Entertainment America and Sony Electronics, Inc as defendants. In this lawsuit, CSIRO alleges that the defendants each infringe the ‘069 patent.

12. On September 9, 2009, CSIRO filed an Original Complaint for Patent Infringement in the United States District Court for the Eastern District of Texas, naming Lenovo (United States) Inc., Lenovo Group Limited, and Lenovo Holding Company, Inc. as defendants. In this lawsuit, CSIRO alleges that the defendants each infringe the ‘069 patent.

13. In each of the complaints described in paragraphs 9 through 12 above, CSIRO alleges that the defendants (hereafter referred to collectively as the "Defendant Customers") infringe the '069 patent through, the manufacture, use, sale, importation, and/or offer for sale of products that practice the IEEE 802.11a/g/n standard.

14. Broadcom and Atheros have sold and/or seek to sell products with IEEE 802.11 a/g/n wireless functionality that have been or may be incorporated into Defendant Customers' products.

15. As a result of CSIRO's accusations of infringement and patent infringement lawsuits, one or more of the Defendant Customers have demanded that Plaintiffs Broadcom and Atheros defend and/or indemnify them against CSIRO's claims of patent infringement.

16. Broadcom and Atheros are under a reasonable apprehension that they will face suit—either for infringement by CSIRO, or through an indemnification demand from one or more of the Defendant Customers—concerning CSIRO's '069 patent infringement claims.

17. An actual controversy exists between Plaintiffs, on the one hand, and CSIRO, on the other hand, regarding questions of infringement and validity of the '069 patent, and Broadcom and Atheros are entitled to relief as requested.

## COUNT I

## DECLARATORY JUDGMENT OF

## NON-INFRINGEMENT OF THE '069 PATENT BY BROADCOM

18. Plaintiff Broadcom incorporates its allegations in Paragraphs 1-17 as if fully restated herein.

19. Broadcom does not infringe, either directly, indirectly or otherwise, any valid claim of the '069 patent.

20. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

21. A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its rights regarding the '069 patent.

**COUNT II**

**DECLARATORY JUDGMENT OF**

**NONINFRINGEMENT OF THE '069 PATENT BY ATHEROS**

22. Plaintiff Atheros incorporates its allegations in Paragraphs 1-21 as if fully restated herein.

23. Atheros does not infringe, either directly, indirectly or otherwise, any valid claim of the '069 patent.

24. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

25. A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its rights regarding the '069 patent.

**COUNT III**

**DECLARATORY JUDGMENT OF**

**INVALIDITY OF THE '069 PATENT BY BROADCOM AND ATHEROS**

26. Plaintiffs Broadcom and Atheros incorporate their allegations in Paragraphs 1-25 as if fully restated herein.

27. The ‘069 patent is invalid for failing to meet one or more of the requirements for patentability, including 35 U.S.C. §§ 102, 103 and 112.

28. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

29. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the ‘069 patent.

**COUNT IV**

**DECLARATORY JUDGMENT OF UNENFORCEABILITY**

**OF THE ‘069 PATENT BY BROADCOM AND ATHEROS**

24. Plaintiffs Broadcom and Atheros incorporate their allegations in Paragraphs 1-29 as if fully restated herein.

25. Upon information and belief, the ‘069 patent is unenforceable due to inequitable conduct committed during its prosecution.

26. On information and belief, the named CSIRO inventors, as described below, and/or others substantively involved in the prosecution of the application leading to the ‘069 patent were aware of information material to the patentability of the claims of the ‘069 patent, and they withheld that information from the U.S. Patent and Trademark Office (“USPTO”) with the intent to deceive the USPTO.

27. The withholding of material prior art with the intent to deceive the USPTO is a violation of the duty of disclosure under 37 C.F.R. § 1.56 and constitutes inequitable conduct.

28. On January 10, 1994, CSIRO filed with the USPTO a declaration signed by all of the named inventors on the ‘069 patent—including Dr. Terence Percival (“Dr. Percival”), Mr. Graham Daniels (“Mr. Daniels”), and Dr. John O’Sullivan (“Dr. O’Sullivan”).

29. In such declaration, the inventors acknowledged their duty under 37 C.F.R. § 1.56 to disclose to the USPTO all information known to them to be material to patentability.

30. The duty to disclose was a continuing one, continuing until and through the date of issuance of the ‘069 Patent.

31. On February 3, 1995, CSIRO filed with the USPTO an Information Disclosure Statement (“IDS”) “in compliance with the duty of disclosure set forth in 37 C.F.R. 1.56.”

32. Upon information and belief, the following are specific items of prior art that CSIRO and the named inventors identified below intentionally withheld from the USPTO.

**The Percival Paper**

33. While this IDS disclosed certain prior art publications to the USPTO, it did not disclose a publication entitled “Wireless Systems at High Bit Rates – Technical Challenges” (“the Percival paper”).

34. The Percival paper was authored by two of the CSIRO researchers named as co-inventors on the ‘069 patent, Dr. Terence Percival and Dr. John O’Sullivan, and Alan Young, a third CSIRO author.

35. On information and belief, CSIRO published, distributed, and presented the Percival Paper to members of the public on November 12, 1992 at the First International Workshop on Mobile and Personal Communications Systems held at the University of South Australia in Adelaide, Australia.

36. The Percival paper related to the CSIRO wireless LAN research that resulted in the '069 patent. Every page of the paper bears the words "CSIRO Division of Radiophysics," and the "Acknowledgments" section of the paper states:

> The work presented here is a summary of the barriers and solutions to providing a high-speed WLAN system. The work is a result of the discussions held over the last twelve months with a large number of colleagues in the CSIRO Institute of Information Science and Engineering and Macquarie University.

37. Because the Percival paper was published more than one year before the actual filing date of the U.S. application leading to the '069 patent (i.e., November 23, 1993) (hereafter "the Application"), it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

38. The Percival paper discloses all of the elements of several of the issued and originally filed claims of the '069 patent, and it discloses most, if not all, of the elements of the remaining issued and originally filed claims.

39. Furthermore, no reference considered by the USPTO examiner during the prosecution of the '069 patent discloses as many of the elements of the issued and originally filed claims as the Percival paper discloses.

40. For at least these reasons, the Percival paper is highly material to the patentability of both the issued and the originally filed claims of '069 patent.

41. The '069 inventors should have cited the Percival paper for consideration by the USPTO examiner(s) in making decisions regarding patentability of the Application.

42. At least two of the named inventors, as described above, were aware of the Percival paper at, before, and during the filing of the IDS and the Application.

43. At least two of the named inventors, as described above, intentionally did not disclose the Percival paper to the USPTO and/or intentionally acted in such a way to ensure that the Percival paper was not disclosed to the USPTO.

44. At least two of the named inventors, as described above, intentionally did not disclose the Percival paper to the USPTO with the intention of misleading the PTO as the disclosure would have had a significant and material impact on the patentability of the Application.

**The Barry Paper**

45. The IDS also did not disclose a publication entitled "High-Speed Nondirective Optical Communications for Wireless Networks" ("the Barry paper").

46. John R. Barry, Joseph M. Kahn, Edward A. Lee, and David G. Messerschmitt authored the Barry Paper.

47. The Barry paper was known to at least two of the '069 patent inventors, Dr. Terence Percival and Dr. John O'Sullivan, because it was cited in the Percival paper.

48. The Barry paper disclosed a wireless LAN using multicarrier modulation and was published in the November 1991 issue of IEEE Network Magazine, a printed publication widely disseminated to persons of ordinary skill in the relevant art.

49. Because the Barry paper was published more than one year before the actual filing date of the Application, it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

50. The Barry paper discloses all of the elements of several of the originally filed claims of the '069 patent, and it discloses most, if not all, of the elements of the remaining issued and originally filed claims.

51. Furthermore, no reference considered by the USPTO examiner during the prosecution of the '069 patent discloses as many of the elements of the issued and originally filed claims as the Barry paper discloses.

52. For at least these reasons, the Barry paper is highly material to the patentability of both the issued and the originally filed claims of ‘069 patent.

53. The ‘069 inventors should have cited the Barry paper for consideration by the USPTO examiner(s) in making decisions regarding patentability of the Application.

54. At least two of the named inventors, as described above, were aware of the Barry paper at, before, and during the filing of the IDS and the Application.

55. At least two of the named inventors, as described above, intentionally did not disclose the Barry paper to the USPTO and/or intentionally acted to ensure that the Barry paper was not disclosed to the USPTO.

56. At least two of the named inventors, as described above, intentionally did not disclose the Barry paper to the USPTO with the intention of misleading the USPTO as the disclosure would have had a significant and material impact on the patentability of the Application.

**The Rault Paper**

57. The IDS also did not disclose a publication entitled “The Coded Orthogonal Frequency Division Multiplexing (COFDM) Technique, and its Application to Digital Radio Broadcasting Towards Mobile Receivers” by J.C. Rault, D. Castelain, and B. Le Floch (“the Rault paper”), published, distributed, and presented to members of the public in 1989.

58. Because the Rault paper was published more than one year before the actual filing date of the Application, it is prior art to the ‘069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

59. The Rault paper discloses most or all of the elements of the issued and originally filed claims of the ‘069 patent.

60. For example, the abstract of such publication states:[1]

> The broadcasting channel towards mobile receivers, especially in a dense urban area, is particularly hostile, which makes the transmission of high bit rate very challenging.
>
> The conjunction of an Orthogonal Frequency Division Multiplexing (OFDM) technique and a convolutional coding scheme (associated to a Viterbi decoding algorithm) is a promising solution (COFDM) studied at CCETT, that is suitable to cope with such a channel.
>
> In the first part of the paper, the theoretical principles of the system are detailed. The second part concerns the realization of a complete COFDM system, designed within the framework of the DAB (Digital Audio Broadcasting) EUREKA 147 project, which is able to broadcast 5.6Mbit/s in a bandwidth of 7MHz. For the time being, this rate corresponds to 16 high quality stereophonic programs. Finally, network aspects are pointed out as far as the introduction of a new radio broadcasting service is concerned.

61. Furthermore, no reference considered by the USPTO examiner during the prosecution of the ‘069 patent discloses as many of the elements of the issued and originally filed claims as the Rault paper discloses.

62. For at least these reasons, the Rault paper is highly material to the patentability of both the issued and the originally filed claims of ‘069 patent.

63. The ‘069 inventors should have cited the Rault paper for consideration by the USPTO examiner(s) in making decisions regarding patentability of the Application.

64. At least one of the named inventors, Dr. Percival, was aware of the Rault paper before the issuance of the ‘069 patent.

65. At least one of the named inventors, Dr. Percival, intentionally did not disclose the Rault paper to the USPTO and/or intentionally acted in such a way to ensure that the Rault paper was not disclosed to the USPTO.

---

[1] CH2682 – 3/89/0000-0428, © 1989 IEEE, CSI0061454.

66. At least one of the named inventors, Dr. Percival, intentionally did not disclose the Rault paper to the PTO with the intention of misleading the PTO as the disclosure would have had a significant and material impact on the patentability of the Application.

**The Le Floch Paper**

67. The IDS also did not disclose a publication entitled "Digital Sound Broadcasting to Mobile Receivers" by Bernard Le Floch, Roselyne Halbert-Lassalle, and Damien Castelain ("the Le Floch paper"), published, distributed, and presented to members of the public in 1989.

68. Because the Le Floch paper was published more than one year before the actual filing date of the Application, it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

69. The Le Floch paper discloses most or all of the elements of the issued and originally filed claims of the '069 patent.

70. The Le Floch paper summarized its disclosed system as follows:[2]

> The system described in this article, combining spectrum and power efficiency, is mainly based on the conjunction of the Orthogonal Frequency Division Multiplexing technique (already proposed for HF data transmission in an ionospheric channel or for transmissions through telephone networks [3] [4]), and a coding strategy associated with diversity in the frequency domain.

71. Furthermore, no reference considered by the USPTO examiner during the prosecution of the '069 patent discloses as many of the elements of the issued and originally filed claims as the Le Floch paper discloses.

72. For at least these reasons, the Le Floch paper is highly material to the patentability of both the issued and the originally filed claims of '069 patent.

[2] 0098 3063/89/0200 0493501, © 1989 IEEE, CSI0042438.

73. The ‘069 inventors should have cited the Le Floch paper for consideration by the USPTO examiner(s) in making decisions regarding patentability of the Application.

74. At least one of the named inventors, Dr. Percival, was aware of the Le Floch paper before the issuance of the ‘069 Patent.

75. At least one of the named inventors, Dr. Percival, intentionally did not disclose the Le Floch paper to the USPTO and/or intentionally acted to ensure that the Le Floch paper was not disclosed to the USPTO.

76. At least one of the named inventors, Dr. Percival, intentionally did not disclose the Le Floch paper to the USPTO with the intention of misleading the USPTO as the disclosure would have had a significant and material impact on the patentability of the Application.

**The Bingham Paper**

77. The IDS also did not disclose a publication entitled “Multicarrier Modulation for Data Transmission: An Idea Whose Time Has Come” by John A. C. Bingham (“the Bingham paper”), published, distributed, and presented to members of the public in 1990.

78. Because the Bingham paper was published more than one year before the actual filing date of the Application, it is prior art to the ‘069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

79. The Bingham paper discloses most or all of the elements of the issued and originally filed claims of the ‘069 patent.

80. Furthermore, no reference considered by the USPTO examiner during the prosecution of the ‘069 patent discloses as many of the elements of the issued and originally filed claims as the Bingham paper discloses.

81. For at least these reasons, the Bingham paper is highly material to the patentability of both the issued and the originally filed claims of '069 patent.

82. The '069 inventors should have cited the Bingham paper for consideration by the USPTO examiner(s) in making decisions regarding patentability of the Application.

83. At least one of the named inventors, Dr. Percival, was aware of the Bingham paper before the issuance of the '069 Patent.

84. At least one of the named inventors, Dr. Percival, intentionally did not disclose the Bingham paper to the USPTO and/or intentionally acted to ensure that the Bingham paper was not disclosed to the USPTO.

85. At least one of the named inventors, Dr. Percival, intentionally did not disclose the Bingham paper to the USPTO with the intention of misleading the USPTO as the disclosure would have had a significant and material impact on the patentability of the Application.

**HF Radios and Modems**

86. The IDS also did not disclose prior-art high-frequency modems and high-frequency radios ("HF radios and modems").

87. HF radios and modems have been in existence since as early as the 1960's. Examples of HF radios and modems include an HF radio system called "Piccolo," the KATHRYN system, and marine HF radio.

88. Because HF radios and modems were offered for sale, sold, made, and used more than one year before the actual filing date of the Application, they are prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

89. HF radios and modems contained or practiced most or all of the elements of the issued and originally filed claims of the '069 patent.

90. HF radios and modems were material to the Application, and the ‘069 inventors should have cited them for consideration by the USPTO examiner(s) in making decisions regarding patentability of the Application.

91. At least two of the named inventors, Graham Daniels and John O’Sullivan, were aware of HF radios and modems at, before, and during the filing of the IDS and the Application.

92. At least two of the named inventors, as described above, intentionally did not disclose HF radios and modems to the USPTO and/or intentionally acted to ensure that these items were not disclosed to the USPTO.

93. At least two of the named inventors, as described above, intentionally did not disclose HF radios and modems to the USPTO with the intention of misleading the USPTO as the disclosure would have had a significant and material impact on the patentability of the Application.

94. In sum, each of the above described papers and HF radios and modems discloses or otherwise satisfies most or all of the elements of the issued and originally filed claims of the ‘069 patent. Thus, the named inventors of the ‘069 patent, as described above, and/or others substantively involved in the prosecution of the ‘069 patent knew or reasonably should have known that the above described papers and HF radios and modems would have been important to and should have been considered by the USPTO examiner(s) in deciding whether to allow the claims.

95. Despite the high materiality of the above described papers and HF radios and modems and the written acknowledgment by the inventors and CSIRO of their duty to disclose material prior art, none of this prior art was disclosed to the USPTO during the prosecution of the ‘069 patent.

**Arguments For Patentability**

96. In response to a prior art rejection the USPTO examiner entered against the originally filed claims, CSIRO canceled the originally filed claims and added new claims in an Amendment filed on June 30, 1995.

97. In arguing for the patentability of the new claims, CSIRO asserted that the prior art cited by the USPTO examiner did not disclose several specific elements of the new claims.

98. However, all of the specific elements relied upon by CSIRO for its patentability arguments are disclosed in the aforementioned prior art, which was concealed from the USPTO.

99. Thus, the named CSIRO inventors, as identified above, and/or others substantively involved in the prosecution of the ‘069 patent knew or reasonably should have known that the above described papers and HF radios and modems would have been important and materially relevant to the USPTO examiner(s) in deciding whether to allow the claims.

100. The named CSIRO inventors, as identified above, and/or others substantively involved in the prosecution of the ‘069 patent acted with culpable intent to mislead or deceive the USPTO by withholding known prior art and by making arguments for patentability which could not have been made had the art been disclosed.

101. In fact, the only prior art that the named inventors disclosed to the USPTO consisted of four references that the European Patent Office brought to the inventors’ attention during the prosecution of their corresponding European patent application. As stated in their lone Information Disclosure Statement dated February 3, 1995: “Such prior art has come to the applicants’ attention by being cited in a Search Report issued October 11, 1994 on the corresponding European application .…” The named inventors did not disclose to the USPTO any of the prior art of which they were independently aware.

102. Upon information and belief, the failure by the named CSIRO inventors, as described above, and/or others substantively involved in the prosecution of the '069 patent to disclose the HF Radios and Modems and the Percival, Barry, Rault, Le Floch and Bingham papers to the USPTO examiner during the prosecution of the '069 patent was done with an intent to deceive the USPTO and constitutes inequitable conduct and a violation of the duty of disclosure, thereby rendering the '069 patent unenforceable.

103. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

104. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '069 patent.

## PRAYER FOR RELIEF

WHEREFORE, Broadcom and Atheros request that the Court enter judgment in their favor against CSIRO as follows:

A. Declare that Broadcom has not infringed, and does not infringe, either directly, indirectly, or otherwise, any valid claim of the '069 patent;

B. Declare that Atheros has not infringed, and does not infringe, either directly, indirectly, or otherwise, any valid claim of the '069 patent;

C. Declare the claims of the '069 patent invalid;

D. Declare the '069 patent unenforceable;

E. Declare this case exceptional and award Broadcom and Atheros their reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

F. Award Broadcom and Atheros their costs and reasonable expenses; and

G. Grant Broadcom and Atheros such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Broadcom and Atheros demand a trial by jury of all matters to which they are entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

Date: November 10, 2009

Respectfully submitted,

**POTTER MINTON**
**A Professional Corporation**

By: */s/ Michael E. Jones*

Michael E. Jones
Texas State Bar No. 10929400
110 N. College Ave.
Suite 500 Plaza Tower (75702)
P.O. Box 359
Tyler, Texas 75710
Telephone: 903.597.8311
Fax: 903.593.0846
Email: mikejones@potterminton.com

***Attorneys for Plaintiffs***
**BROADCOM CORPORATION and ATHEROS COMMUNICATIONS, INC.**

Robert A. Van Nest
CA State Bar No. 84065
(*pro hac vice* application to be filed)

Christa M. Anderson
CA State Bar No. 184325
(*pro hac vice* application to be filed)

KEKER & VAN NEST, LLP
710 Sansome St.
San Francisco, CA 94111
Telephone: 415.391.5400
Fax: 415.397.7188
Email: rvannest@kvn.com
canderson@kvn.com

***Attorneys for Plaintiff***
**BROADCOM CORPORATION**

Scott D. Baker
CA State Bar No. 84923
(*pro hac vice* application to be filed)

REED SMITH LLP
101 2nd St Ste 1800
San Francisco, CA 94105
Telephone: 415.543.8700
Fax: 415.391.8269
Email: sbaker@reedsmith.com

***Attorneys for Plaintiff***
**ATHEROS COMMUNICATIONS, INC.**